Whenever the appellant is ready, are you both counsel at table? Yes, sir. All right. I should have asked, it's okay if I put water here, correct? Please, go ahead. It's a dry mouth experience sometimes. It was Monday when I was in the Third Circuit, Your Honor, so. Same issue? Sir? Related issue? Pretty much the same case, yes, Your Honor. All right. May it please the Court? My name is Stephen Stamboulia. I'm here on behalf of Mr. Hollis. As an initial matter, I'd like to address the standing issue. We did not appeal the dismissal from the District Court of the National Firearms Act, which is what the District Court took issue with when they dismissed the Second Amendment claim related to 18 U.S.C. 922 under the Gun Control Act and the National Firearms Act. Texas law prohibits people to have machine guns as long as they're properly registered under the National Firearms Act. The way the District Court looked at the standing said, well, if you get rid of the National Firearms Act and you get rid of the machine gun ban, Texas has no safe harbor provision for a machine gun that's not lawfully registered under the National Firearms Act. So we have not appealed that dismissal, so we believe that standing is proper now in the District Court if we go back on remand. Additionally, since this Court has a duty to avoid the constitutional question at issue whether or not a machine gun protects a Second Amendment, we simply look to the statutory argument that we made. This 18 U.S.C. 922-0, which is generally known as the machine gun ban, prohibit a trust from owning a machine gun. If you look at the way that Congress wrote the law, it defined person differently in the Gun Control Act, in the GCA, than it defined them in the NFA under the National Firearms Act. The National Firearms Act defines a person as a trust. The Gun Control Act defines person as normally how we would think of people, you know, individual persons and corporations. How can the machine gun get to wherever the trust's, you know, safe deposit box is without there being a person involved? It's the trustee of the trust, ma'am. Okay, and so isn't that a person? Well, it's a person in as much as that it's a trustee of the trust. It's not the person that owns the machine gun, it's the trust that owns the machine gun. Aren't they going to be holding the machine gun to take it to the safe deposit box or wherever it's going to be kept by the trust? That's right, in the capacity of a trustee of the trust. And if we look at just the plain language of the statute, that's the interpretation that we come back with is that the trustee is obviously going to have to handle and . . . So the trustee's not a person at that point? The trustee is . . . Or an individual . . . That's correct. It's the trustee of the trust. And that's if the court wants to avoid the constitutional issue of whether or not the  It would be a rather odd formulation, perhaps. Well, it is the easiest way to avoid the question if this court is inclined to do so. Obviously we would ask that the court look at the text and the history of the Second Amendment and apply it in the way that Scalia applied it in D.C. v. Heller to come out and say a Second Amendment protects a bearable arm, prima facie. In fact, they actually said that. The Second Amendment extends prima facie to all bearable arms. And that was recently restated in Saitano that we filed a 28-J letter on just a couple weeks ago. Saitano is even more interesting because the entire government's brief . . . not entire, but a substantial part is machine guns aren't in common use, therefore they can't be protected under the Second Amendment. If we take the common use test, which the Supreme Court could not have actually made that in to be a test, a musket, which nobody would say is not protected by the Second Amendment. But it's not in common use today. No one has muskets anymore. Most people have AR-15s and handguns. So if we look at the Saitano opinion that came out about stun guns, 200,000 stun guns are owned by civilians, right? So that leads us to the proposition of almost 200,000 machine guns. If stun guns are commonly used for lawful purposes, then why aren't machine guns commonly used by law-abiding citizens for lawful purposes? So the pieces start to kind of fit together. One of the issues that we had in the lower court is we got kicked out on a 12B1 and a 12B6, standing for the Second Amendment claims and a 12B6 for the equal protection and due process. And we asked for discovery under Rule 5060, and it was supported by an affidavit for Mr. Hollis. We actually have proof now, which we filed in a motion for judicial notice before the May 19, 1986 Form 1 machine gun that the ATF said in their brief has never happened before. But we know that that's not true. So it kind of goes back to we needed to get discovery in the lower court so we could determine if Mr. Hollis' equal protection rights were being violated as to how many times the ATF has allowed other people similarly situated to have post-May 19, 1986 machine guns, and we were denied that relief. But if we go back to the . . . Can you tell me again how that would help us, knowing that? How would that help you? Under equal protection? If someone . . . You would say, okay, but you would . . . knowing that somebody else got approval, why does that necessarily imply an equal protection argument? Do you think it's because it was a discriminatory reason he didn't get it, or . . . Well, the ATF says it's never happened before, that we don't do this before, and we alleged in our complaint that we have done this before. So if we can prove that there's some equal protection violation, I think that would . . . I don't understand how the fact that someone else's application gets approved necessarily implies an equal protection problem. Are you saying it's because that person . . . there was some protective characteristic issue? I mean, I'm trying to understand the equal protection argument, even assuming someone else got . . . And that's what . . . and without knowing who else got the machine guns, it's hard for me to articulate to the court exactly what those different characteristics would be. But absolutely, we would look to see . . . almost like in Title VII type cases, where you have different comparators. I would look to see Mr. Hollis's United States Marine Corps Reservist holds a top-secret clearance. Have there been any other military personnel that have been granted Form I machine guns, or even Form IV transfers of a machine gun? So I think it does tie into equal protection. I think a case could be made had we had the proof in the district court. Now, I do have one of the forms and that is in front of the court right now, but it was not in front of the lower court because, interestingly, this is . . . it's interesting to me. The ATF transferred it to one of my experts as of December. So I know that the form is valid, and the ATF in their response never said the form wasn't valid. But in their briefs, they say this has never happened before. And I think that's a problem, and I think that there are more out there. And we won't know until we get the discovery to determine, unless this court decides the Second Amendment protects the machine gun. So we've discussed Saitano, and we believe Second Amendment, Heller holds, it extends to all firearms, prima facie to all bearable firearms. So then we look back to the Miller case, U.S. v. Miller. It's a 1939 case that talked about a short-barreled shotgun. Well, before we leave Heller, and you probably will come back to it anyway, there is language in Heller specifically referring to machine guns. It is not a holding, but it is an identification that, don't get too worried by this opinion, which certainly doesn't mean we'll authorize . . . 50 caliber machine guns or even M-16. So what do you make of that? Well, Your Honor, as Your Honor said, it is not the holding of Heller. Heller was about a handgun . . . It is certainly an indication . . . I am cutting you off, I apologize, we have limited time. But it is certainly an indication of the kinds of distinctions, without really getting into the analysis, that machine guns have usually had in identifying what is an acceptable weapon for certain purposes and what is not. So what has changed? Is Heller itself saying that Heller is wrong when it refers to machine guns as being different? Or is it post-Heller case law that you are relying on? Well, I rely on a couple of different things, and you kind of have to read a little bit in tandem the Miller holding of whether a firearm preserves the efficiency of the militia or is a part of the ordinary soldier's equipment. Well, but he's already said, the late Justice Scalia, that the prefatory clause is somewhat now separate from the rest of the Second Amendment. And that doesn't invalidate . . . certainly doesn't invalidate what was held in Heller, but it also doesn't necessarily express where we should go in the future. So I think tying your argument to the prefatory clause and what a National Guardsman would today have as standard issue is undermined by Heller itself. And we have not tied it directly to the prefatory clause, but the rest of that sentence that Your Honor just quoted, it says it does not change the interpretation of the right, that the prefatory clause may be detached. The plain text of Heller, if we look at just the sentence it says, the Second Amendment applies, extends prima facie to all bearable arms. So then we have a class of arms, and we have to decide, well, what are the bearable arms? So we've got handguns, and we have rifles, and we have shotguns. Well, Mr. Hollis's Form 1 M-16 that he applied to the ATF to make, paid his $200 tax, went through the approval process, essentially, because these are highly regulated weapons. We're not asking the court to say, hey, you know, machine guns down at 7-Eleven, you can just buy them at any time, just like, you know, if you want to go into a gun store right now, you could not buy a machine gun. You couldn't buy anything regulated under the NFA. You have a very, very lengthy approval process to do that. Mr. Hollis went through that. We're fine with that right now. We're just asking that he be allowed to have the machine gun that he was authorized to have and that the ATF didn't have the authority to revoke the stamp once the ATF approved the stamp. I can point the court to a case, U.S. v. Ardoin, A-R-D-O-I-N, I believe it was a 1995 case that specifically said the ATF has the authority to accept these tax payments, this $200 tax payment, but it chooses not to. Well, in this case, I submit to you that they chose to accept the tax payment and then they arbitrarily revoked it. So I think that that's another way to avoid the constitutional questioning and let Mr. Hollis have the relief that he needs. But I think going back to Judge Southwick, your question, what cases are we relying on? Heller didn't say machine guns, it said if machine guns may be banned. It didn't say machine guns are hereby banned from here on out. And then it talked about a number of presumptively longstanding regulations. The Gun Control Act ban in 18 U.S.C. 922-0 is not a longstanding regulation. That can't be even argued about. It came into effect in 1986. So I think the D.C. handgun ban was sometime in the 70s, which they obviously did not consider that to be a longstanding ban because they overturned it. So if we look at the Heller case and then we go into Satano, the most recent case with Justice Alito's concurrence. How is a machine gun a weapon typically used in defense of hearth and home? Just like any... That's really what Heller was... That's right. A machine gun is the same as a handgun, just very similar. They're functionally different. I'm not going to argue in front of you that they're not functionally different guns. One expends one round per trigger every time you shoot it and the other one can expend, you know, one to three to however you want to configure it to fire. But as a person, the government shouldn't be allowed to tell me what is the best for me to defend my house and my... Your hearth. Thank you. My hearth and home. So I get to decide that for myself and for my family. It might be that Mr. Hollis, who is a Marine, is most used to having his select fire M4 when he's, you know, defending himself. So I shouldn't... Most comfortable using a .50 caliber machine gun. Well, that's not quite... I mean, you can't bear a .50 caliber, at least you don't want to. That's perfect. But that's perfect because that fits in exactly with the Heller test of bearable on the person. And so what we do then is we read into the Heller test of, well, extends prima facie to all bearable arms. A .50 cal submachine gun, probably not a bearable arm, right? But an M16 is. Or it's a person big enough. But I would say it is not... Well, I'm not... I hope I'm not, but... In other words, all I'm saying is that what a Marine, ex-Marine may be used to is not the test. And what he's most comfortable with is not the test. What is the test is what we're trying to figure out, but I don't... But since we are detached from what the militia and National Guard would generally be using when they march off to wherever field where they are mobilizing so they can finish against the British or whoever entering this time, it seems to me that that's just not the analysis anymore. What kinds of weaponry that today's militia would be using or are most comfortable with using? Well, Heller didn't say that the only reason for the Second Amendment was for the defense of hearth and home. It said that one of the reasons, and I think I... It talked about the first clause being one of the reasons, and then the core reason being the defense of hearth and home. But it's not detached, as Justice Scalia said, from the prefatory clause as well, and I don't know if that made sense. It made sense in my mind. It didn't. Okay. So we look at the first clause, a well-regulated militia, and we look at the rest of the clause. Justice Scalia didn't necessarily separate out the two clauses, and he didn't just strike through the first clause specifically. So under Heller, Miller, even if we look at Saitano, it's to see the number if we're going to do a test on numerosity, about how many are at law... Well, I mean, Saitano, a stun gun is a really different animal from a machine gun, it seems to me. A stun gun's primary purpose would be defensive. It can be used aggressively, I agree, like anything, frankly, but I guess you can take a shield and hit somebody with it, but it's primarily defensive. It also is not universally lethal, the way a machine gun is universally either lethal or you're not going to really be a happy camper once you've been on the receiving end of it. Right. So can we really make a lot of parallels between Saitano in this case? Absolutely. Tell me what those are. I think they're one and the same, in fact. If we look at the dangerous and unusual, which Saitano says is the conjunctive test that they applied in Saitano, you know, obviously a stun gun can be dangerous, as Your Honor just said. Obviously a machine gun can be dangerous, too. We have to look at them in tandem. Is a machine gun unusual? Is a stun gun unusual? The court said 200,000 stun guns, that's widely owned. So the corollary is 200,000 machine guns, or I think as the ATF FOIA said, about 197 privately owned. It's got to be the same. There's no functional difference between dangerous and unusual for a machine gun.  Unusual means not lawfully possessed for lawful purposes by law-abiding citizens. Well, 200,000 machine guns, 200,000 stun guns, the test fits. Thank you. May it please the Court.  As the Supreme Court made very clear in Hiller, machine guns are not subject to Second Amendment protection. Every court of appeal is to address this issue. Will you quote the part of Hiller that makes it very clear that machine guns are not protected? I mean, I think we know what language we're talking about. How do you read that as saying clearly machine guns are not protected? Sure. Well, let me just walk through, there are a couple parts in Hiller that lead up to it. So first at page 623, and of course a central issue in Hiller between both the dissent and the majority opinion was what the meaning of Miller was. And at 623 what the majority says is Miller stands only for the proposition that the Second Amendment right extends only to certain types of weapons. So that was a distinction between the two opinions that said only certain types of weapons are protected. Then later it says we may as well consider what types of weapons Miller permits, so what types of weapons are protected by the Second Amendment. And it immediately then says it would be startling if restrictions on machine guns might be unconstitutional. So right there it's saying that would be a very startling interpretation. It's one that we are rejecting because what the Supreme Court did was it said the Second Amendment, despite its preparatory clause, is not intended to protect any weapon that might be useful in warfare, which is exactly Plano's position here. Rather, the core of the Second Amendment is the right to protect oneself, self-defense at hearth and home, in the home. And when the Second Amendment was enacted, individuals would report to militia duty bearing those arms that they already lawfully possessed as part of that right to self-defense. So that doesn't mean that now, because a machine gun might be useful in warfare, it would be protected. That's what the Supreme Court said there. It then later on said again, at page 627, we also recognize another important limitation on the right to keep and carry arms, which is that the sorts of weapons protected were those in common use at the time. And then it addressed a ban on M16s, the exact weapon Plano wants here, and said, yes, it's true, the fact that M16s may be banned loosens the fit between the preparatory clause and the operative clause, but that's not a reason to alter our interpretation of the Second Amendment. So I think it was clear, and of course, every other court of appeal has reached that conclusion. By saying Heller already resolved the issue, or by using other case law and other analysis to say, relying on Heller, we now declare what was not fully declared in Heller and say machine guns are also a ban? Isn't that the usual approach? I think— Better language than I just used, but the usual approach? I think courts of appeals have followed both approaches, Your Honor. I think some courts have been satisfied that Heller was clear enough, but you're absolutely right that some courts, and it's entirely appropriate to engage in some analysis, but it's very clear, this Court has said it multiple times, the Supreme Court has said it multiple times, machine guns are not the type of weapon, are not designed for use by lawful citizens for lawful purposes. They're designed for warfare. And so under the test enunciated in Heller, they're clearly not the type of weapon protected. It's a list in your brief of circuits who have agreed, are all those cases, and you used the phrase machine guns, which is the right statutory phrase, are all those M16 cases? I'm not sure, Your Honor. Is anything more, even more warfare-related involved in any of those cases? There may have been. I'm not exactly sure, but what I would say is that it's not as if any of the court's analysis turned on whether it was a .50 caliber machine gun. So you're looking at what the limitations may be. An M16 is a fairly standard weapon in some circles, military circles. But also very similar to an AR-15, other than, obviously, that's the factual basis of this case is the similarity, maybe not factual basis, but part of the factual basis. So it seems to me the M16 is as close to being between what Heller is clearly saying is permitted and is leaving open as what may not be permitted. It is a somewhat borderline weapon. And so I'm just wondering if any of these cases you have cited have dealt with more clearly war-related weapons than an M16. I'm not sure, Your Honor, but a couple things. First, in Heller it did expressly address a ban on M16s. So I do think that the majority was contemplating M16s as being among the weapons not subject to Second Amendment protection. I didn't understand. What was the preface for what you just said? State that again. The majority opinion in Heller expressly addressed a ban on M16s. It said the fact that M16s may be banned could be said to loosen the fit between the prefatory clause and the operative clause, but that's not a reason to alter our interpretation. So I do think it was including M16s among machine guns not protected by the Second Amendment. But secondly, as Your Honor's question indicates, the distinction is automatic fire. And when a weapon has automatic fire, it becomes a machine gun. And every court to address machine guns in whatever context have recognized that they are uniquely dangerous firearms akin to explosives, inherently dangerous. You know, the nine— Does that make them unusual, though? Because he's saying you've got to have both. So it's dangerous. So, fine. Spot you that. But if you have that, then does that make it unusual? Well, I don't know where he gets this requirement that you need to have both. I think what— Well, the word and is a conjunction. Well, there's a couple parts in the Heller test. It does at one point reference the historical practice of prohibiting dangerous and unusual weapons. It also talks about weapons typically used by law-abiding citizens for lawful purposes. And it talks about the purpose of the weapon. And when it talks about machine guns not being protected by the Second Amendment, I think it's simply saying these are weapons designed for warfare, not for self-defense. So I don't really think the number of machine guns that exist is relevant to the inquiry. The Supreme Court certainly didn't seem to suggest it was relevant. And let me just briefly mention, my opposing counsel talks about the opinion in Saitano, but he wasn't talking about the operative opinion. He was speaking to the concurrence joined just by Justice Alito and Thomas. The operative opinion there, there are a couple points to make. First of all— The operative opinion is rather short and says you didn't read Heller. Exactly. And they're— Go back and do it again. Right. So just as Your Honor— You should have said more to Massachusetts or something. Exactly. You didn't read Heller. First of all, it was about stun guns. Secondly, it didn't even say stun guns are protected. It just said go back and do it again. And third, the reason it said go back and do it again, among other things, was that the Massachusetts court had looked to whether the weapon would be useful in warfare. And of course, that's exactly what the plaintiff wants this court to look to. But it also looked at what was extant in 1789 or whatever, and they said, no, that isn't the question. Right. And that's not a point we're trying to make here either. So really, that opinion, if anything, just underscores the errors in plaintiff's approach. So just to return to your question, I don't think that the number of machine guns is relevant given what Heller said. But I would say that the number that he's identified of pre-1986 machine guns, which I think is around 175,000, that still means that 99.9 percent of the firearms that are privately owned in this country are not automatic weapons. Those are not stun guns. That's right, Your Honor. And so I just think under any way you look at it, it's clear that machine guns are— What about the argument that you approved his application and then arbitrarily withdrew it and shouldn't have done that? Does that resolve the case and we don't have to get into this long and very interesting analysis of the Second Amendment? No, Your Honor. He brought a detrimental reliance claim at district court. He decided not to raise it on appeal. So he's given up that claim, and for good reason, because a detrimental reliance claim requires affirmative misconduct on the part of the government. Here, the government made a mistake. ATF certainly made a mistake in approving his application, but it doesn't rise to the level for detrimental reliance. What about the equal protection? You denied me discovery of who you granted applications to, and therefore I don't know if I was discriminated against or treated improperly based on some characteristic I shouldn't have been treated about. Well, I share your questions, Judge, about what exactly the plaintiff is trying to make out as an equal protection claim there. I guess if I'm, I didn't get a good answer, but I guess what he's saying is if you just arbitrarily grant it to Mr. A and not to Mr. B, that that's arbitrary and then that's not equal protection. You're not treating people equally based on, you know, so it's not a protected characteristic issue, but it's just arbitrariness. Government can't just say, well, I like you and not you. Right, and that would not be a basis for an equal protection claim, and I don't even think that he's alleged facts at that level anyway. But so as we've indicated, he's certainly not a member of a protected class. There's no fundamental right. So at that point, what he's saying is, well, if ATF mistakenly approved somebody else's application, then it has to approve every other application for a machine gun brought  But of course, that's not the answer. The answer is, if ATF mistakenly approved somebody else's application, it's to revoke that other person's application. It's certainly not an equal protection clause violation. How do we know, though, that if we know somebody else was approved, how do we know it was mistaken? Well, it's really hard to say. What if it was purely arbitrary? They're just like, they have some guy sitting in an office going, well, I'll approve every fifth application. Would that pass muster under the Constitution? Can the government do that? Can that just be completely arbitrary? I'm not talking about having discretion. I'm not talking about making decisions. None of that. And not using a protected characteristic, like I'm going to just disapprove all the white females or something. Not that kind of situation, but just every fifth application, I'm going to just approve because I'm just going to do that. Does that raise any concerns, if that were the evidence? It would certainly be a more difficult case. I have to confess, I don't know exactly the contours of the equal protection clause case law with respect to that sort of question, but I would say that there are pleading requirements. There is Iqbal and Twombly, and the plaintiff certainly hasn't alleged that state of affairs with any level of specificity. So you're saying it was discovery. And my question, the way we got to this whole series of hypotheses, is what's this discovery going to show? Because he's not claiming, well, I was discriminated against because of a protected characteristic. And so that's your typical equal protection. I mean, the fundamental right issue is kind of subsumed in the Second Amendment argument. And so then what else is there? And then there's this notion of just total arbitrariness on the part of government. So I'm just exploring, is that relevant, and could that be revealed by this discovery? I realize I'm asking kind of a ridiculous hypothetical, but I'm just trying to understand, is there any discovery argument here to be made? No, there really isn't, Your Honor. First of all, he hasn't cited a case to suggest that that would entitle him to a firearm. And of course, it wouldn't. Secondly, he hasn't alleged with any specificity facts suggesting that that is the case. And there is a pleading requirement here. And so, you know, the court here ruled on a motion to dismiss, 12 v. 1, 12 v. 6. Of course it didn't need discovery to rule on that basis. Plaintiff failed to state a claim. He's not entitled to discovery now because he still has failed to state a claim. I've addressed really everything I'd like to address. If there are any questions on any specific aspects of this case, I'm happy to answer them. Thank you, Counselor. Thank you. Can you please accord? I'll be brief, and I'd like to just address a couple points that my co-counsel said about the conjunctive test, that he doesn't know where we got the conjunctive test from. If we read Saitano in the concurring opinion from Justice Alito, and I'll just read it. It says, the Supreme Court judicial holding the stun guns may be banned as dangerous and unusual weapon bears no better. As the per curiam opinion recognizes, this is a conjunctive test. A weapon may not be banned unless it is both dangerous and unusual. Well, now the government says it doesn't matter how many numbers of machine guns in existence. Well, certainly it mattered to the Saitano Supreme Court that the other courts have said, well, machine guns are dangerous and unusual. Doesn't impact this court's, or shouldn't impact this court's analysis because the other courts just merely say, these machine guns are dangerous and unusual. But they don't really tell us what dangerous and unusual mean. So if this court would look at the text of the Heller opinion in all of the cases that they cited, going back to Blackstone, it would come, hopefully, to the conclusion that it is not a mere carrying of the arm. It's a time, place, and manner restriction on what type of the arm is carried. And we think that that is what the Heller opinion talks about when they talk about the Second Amendment is to the weapon itself. And that the M16, which is a bearable arm, and I mean, Heller could not be more clear about the Second Amendment extends prima facie to all bearable arms, which was, again, repeated in the most recent Saitano Supreme Court case. So are there any other questions? Thank you. I do have one question. Yes, sir. Are you two a tag team? Were you in the Third Circuit on Monday? Where to next? Hopefully home. That would be nice. And hearth. And hearth. I have my machine gun with me. Well-protected hearth, I'm sure. That's right. Very well-protected. Thank you. We'll take a brief rest.